UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JERE GRAY, et al., | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )     1:21-cv-00071-LEW |
| | ) |
| JANET T. MILLS, et al., | ) |
| | ) |
|     Defendants | ) |

## ORDER ON MOTION TO DISMISS

Plaintiffs have brought this action against several current and former state officials, seeking a declaratory judgment that the Defendants' actions taken in response to the ongoing COVID-19 pandemic violated their constitutional rights, as well as damages for these alleged constitutional violations. But no matter which way Plaintiffs' claims are framed, this court lacks the power to grant the relief requested. Plaintiffs may not seek damages, because Defendants are immune from suit in their individual capacities; nor may Plaintiffs seek declaratory relief, because the challenged policies are no longer in effect.

## PARTIES

Plaintiffs are Maine residents and businesses who allege that Maine's emergency public health measures have violated their constitutional rights. Their stories vary in the particulars—medical conditions inadequately treated, childhood traumas forcibly relived, religious worship foregone, entrepreneurial dreams denied—but they are united by a common truth that, while this public health crisis has been challenging for everyone, it has had a particularly devastating impact on a select few.

Defendants are current or former state officials. Janet T. Mills is Governor of Maine; Dr. Nirav D. Shah is Director of the Maine Center for Disease Control and Prevention; Jeanne M. Lambrew is Commissioner of the Maine Department of Health and Human Services; Heather Johnson (together with Mills, Shah, and Lambrew, the "Executive Defendants") is Commissioner of the Department of Economic and Community Development; Troy Jackson is President of the Maine Senate; and Sara Gideon (together with Jackson, the "Legislative Defendants") is the former Speaker of the Maine House of Representatives. All except Gideon are sued in their official and personal capacities; because Gideon had left public office by the time that this action commenced, she is named in her individual capacity only.

## BACKGROUND

In March of 2020, Governor Mills declared a State of Civil Emergency to respond to the quickly-spreading COVID-19 pandemic, pursuant to her authority under the Maine Emergency Management Act ("MEMA"), 37-B M.R.S. §§ 701 *et seq*.[1] Over the course of the ensuing fifteen months, Governor Mills issued a series of executive orders aimed at slowing the effects of this devastating pandemic. The executive orders included limitations on gathering sizes, *see* E.O. 14 FY 19/20, restrictions on travel, *see* E.O. 34 FY 19/20, business closures, *see* E.O. 19 FY 19/20, and requirements that individuals wear face masks

---

[1] MEMA authorizes the Governor to declare a state of emergency in response to imminent disasters, *see* 37-B M.R.S. § 742, and affords the Governor certain emergency powers during the duration of the emergency, including the power to "[m]ake, amend and rescind the necessary orders" to respond to the emergency, *id.* § 741. Though a state of emergency may not last longer than 30 days, the Governor unilaterally may renew or end a state of emergency. *Id.* § 743. Plaintiffs do not suggest that Governor Mills has violated MEMA, though they do (as discussed below) argue that MEMA is itself unconstitutional.

in certain public settings, *see* E.O. 49 FY 19/20. Governor Mills continued to issue executive orders throughout this fifteen-month time period to ensure that Maine's emergency public health measures remained in step with evolving expert guidance and fluctuating infection rates in Maine, and also continually renewed the State of Civil Emergency that authorized her to issue such orders. During the same period, Defendants Shah, Lambrew, and Johnson issued coordinated mandates and policies to carry out Governor Mills' broader pandemic response.

Shortly after Governor Mills declared the State of Civil Emergency, the Maine House of Representatives and Maine Senate (collectively, the "Legislature") adjourned for the remainder of the year to avoid the prospect of large legislative sessions spreading the virus among legislators. Though members of both parties sought, at various times, to reconvene the Legislature, the Legislature did not reconvene in full until March 2021—nearly a full year after beginning its extended recess.

Governor Mills and the Executive Defendants regularly updated Maine's emergency public health measures to craft a tailored response to the pandemic that they considered to be in line with expert guidance. Maine's economy formally "reopened" from the initial business closures and lockdowns on October 6, 2020. *See* E.O. 14 FY 20/21. Most public face covering requirements were repealed on May 19, 2021, *see* E.O. 39 FY 20/21, and the final public gathering limits expired on May 24, 2021, *see* E.O. 35 FY 20/21, E.O. 38 FY 20/21. By the end of this May, over seventy percent of eligible Mainers had

received at least one dose of the COVID-19 vaccine.[2] On June 30, 2021, Governor Mills declared an end to the State of Civil Emergency, and issued an Executive Order providing for the phasing out of all previously-declared emergency responses to the pandemic. E.O. 40 FY 20/21. The final masking requirement—applicable to schools—expired on June 30, 2021, as did the last remaining travel restrictions. The other remaining emergency measures were terminated between June 30, 2021, and August 31, 2021.

Plaintiffs commenced this action on March 9, 2021 and amended their complaint on May 14, 2021. Plaintiffs' allegations are manifold, and I will not recount them in detail here. The gravamen of Plaintiffs' complaint is that the State of Civil Emergency, Governor Mills' executive orders, and the policies adopted by the remaining Executive Defendants to implement those orders violated several of their constitutional rights, including the right to travel, the right to privacy, the right to free exercise of religion, and the right to be free from takings without just compensation, among others. *See generally* First Amended Complaint 83–110 (ECF No. 23) ("Complaint"). Plaintiffs also contend that the executive orders issued pursuant to MEMA are invalid because MEMA represents an impermissible delegation of legislative power to the Governor in violation of Maine's constitution. *See* Complaint 85. Lastly, Plaintiffs argue that the Legislature's extended recess—specifically, the Legislative Defendants' and Governor Mills' failure to reconvene the Legislature during that time—violates federal and state constitutional protections for political speech and the right to assemble. *See* Complaint 96–97. Plaintiffs request that I declare these

---

[2] See Office of Governor Janet T. Mills, *Governor Mills Announces Another Vaccination Milestone*, STATE OF MAINE (May 25, 2021), https://www.maine.gov/governor/mills/news/governor-mills-announces-another-vaccination-milestone-70-percent-maine-people-12-and-older.

various actions to have been illegal, and, in addition, that I award them money damages. *See* Complaint 111–12.

On July 20, 2021, Defendants moved to dismiss on multiple grounds. First, Defendants argue that the cessation of all emergency measures challenged in Plaintiffs' complaint renders this case moot. *See* Defs.' Mot. 4–9 (ECF No. 33). Second, Defendants argue that this Court cannot award the relief requested by Plaintiffs because Defendants are immune from suit in their official capacities under the doctrine of sovereign immunity and are immune from suit in their individual capacities under the doctrines of absolute and/or qualified immunity. *See* Def.'s Mot. 9–10, 36–40. Finally, Defendants argue that the case should be dismissed because Plaintiffs have failed to state a claim upon which relief can be granted. *See* Def.'s Mot. 10–36.

## DISCUSSION

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure "raises the fundamental question whether the federal district court has subject matter jurisdiction over the action before it." *United States v. Lahey Clinic Hosp., Inc.*, 399 F.3d 1, 8 n.6 (1st Cir. 2005) (citation and quotation marks omitted). A "trial court without jurisdiction lacks 'all authority to hear a case.'" *United States v. Millenium Lab'ys, Inc.*, 923 F.3d 240, 249 (1st Cir. 2019), (quoting *United States v. Kwai Fun Wong*, 575 U.S. 402, 409 (2015)). As a general rule, "courts must adjudicate plausible challenges to their jurisdiction prior to adjudicating the merits of a case." *Brait Builders Corp. v. Massachusetts, Div. of Cap. Asset Mgmt.*, 644 F.3d 5, 10 (1st Cir. 2011). When faced with a motion to dismiss for lack of jurisdiction, I "ordinarily must resolve disputed facts" or

5

"choose among competing inferences." *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 365 (1st Cir. 2001).

I.

To start, Plaintiffs may not seek damages for the alleged constitutional violations, because Defendants are immune from liability under the doctrines of absolute and qualified immunity.

A.

Defendants are absolutely immune from suit with respect to the Legislature's failure to convene for nearly a year during the COVID-19 pandemic. State "legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities," *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998) (citing *Tenney v. Brandhove*, 341 U.S. 367, 372–75 (1951)), which immunity "applies when . . . officials act 'in a field where legislators traditionally have power to act,'" *Acevedo-Garcia v. Vera-Monroig*, 204 F.3d 1, 8 (1st Cir. 2000) (quoting *Tenney*, 341 U.S. at 379). Absolute immunity is a functional doctrine that attaches to legislative *actions* rather than legislative *positions*, meaning that executive branch officials are also absolutely immune from liability "when they perform legislative functions." *Bogan*, 523 U.S. at 55.

Defendants' decisions around whether and when to convene the Legislature in the face of a global pandemic are the sort of "quintessentially legislative" conduct that this doctrine protects. *Id*. The Maine Constitution makes clear that such decisions are legislative insofar as it empowers legislators to make them. *See* Me. Const. art. IV, pt. 3, § 1 (stating that the Legislature shall vote on whether to convene for a special session). That the

6

Governor may also call the Legislature in to session "on extraordinary occasions" does not remove this power from the field of legislative activity, but rather reaffirms that, in the "[]ordinary" course of events, it remains a legislative power. *See* Me. Const. art. V, pt. 1, § 13. What's more, looking to other legislative bodies makes clear that the decision of whether and when to convene or adjourn a legislature is, and has traditionally been, a power afforded to legislators.[3] Accordingly, Defendants are immune from suit over the constitutionality of the Legislature's extended recess.

B.

Defendants are also immune from suit as to the rest of Plaintiffs' claim for money damages under the narrower doctrine of qualified immunity. Government officials sued in their individual capacities "are immune from damages claims unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Irish v. Fowler*, 979 F.3d 65, 76 (1st Cir. 2020) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting in turn *Reichle v. Howards*, 566 U.S. 658, 664 (2012))). The unlawfulness of conduct is said to be "clearly established" only when it is "dictated by controlling authority or a robust consensus of cases of persuasive authority" such that any "reasonable official would understand that what he is doing is unlawful." *Wesby*, 138 S. Ct. at 589–90 (citations omitted). Accordingly, officials are only liable "for violating bright lines, not for making bad guesses

---

[3] *See, e.g.*, U.S. Const. art. I, § 7 (providing that Congress need not consult the President on questions of adjournment); Auth. of the House of Commons, Standing Order of the House of Commons 13, https://publications.parliament.uk/pa/cm201516/cmstords/1154/body.htm#13 (providing that the Speaker of the House of Commons retains the authority to call Parliament when into session when it is otherwise in recess).

in gray areas." *Rivera-Corraliza v. Morales*, 794 F.3d 208, 215 (1st Cir. 2015) (citation and quotation marks omitted).

Though Plaintiffs argue at length that Defendants violated several provisions of the federal and state constitutions, they offer no controlling or even persuasive authority making clear that this is so. Plaintiffs' reliance on *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020), *see* Complaint 94 (citing *Cuomo*, 141 S. Ct. at 69), fails to meet this bar. As an initial matter, as *Cuomo* was not decided until November 25, 2020, it is only relevant for the purposes of qualified immunity, if at all, with respect to actions taken after that date. *See Wesby*, 138 S. Ct. at 589 (law must be clearly established "at the time" of alleged violation) (quoting *Reichle*, 566 U.S. at 664). What's more, *Cuomo* was, by its terms, limited to a factual context in which officials imposed incredibly restrictive limits on houses of worship that were harsher than comparable limits placed on secular businesses. *Cuomo*, 141 S. Ct. at 66–67. Maine's limits on religious services were neither as restrictive as those at issue in *Cuomo* nor discriminatory against religion. *Compare* E.O. 16 FY 20/21 (limiting all indoor gathering to no more than fifty people) *with Cuomo*, 141 S. Ct. at 66 (ten person gathering limit for houses of worship, but no such capacity limit for certain "essential businesses"). To the contrary, shortly after *Cuomo* became controlling law, Governor Mills updated Maine's gathering limits to discriminate *in favor* of religious institutions by permitting large houses of worship to exceed the generally applicable indoor gathering limit. *See* E.O. 31 FY 20/21.

That Plaintiffs do not identify controlling authority on these issues is to be expected. Faced with an unprecedented global health crisis, Defendants responded with

8

unprecedented public health measures, the constitutionality of which courts had not previously had reason to address. A global pandemic is nothing if not the paradigmatic gray area that calls for public officials to make the best guesses that they can, and Defendants' actions are precisely the sort that qualified immunity exists to protect.

II.

My analysis of the Plaintiffs' claims for declaratory relief begins and ends with mootness. "When a case is moot—that is, when the issues presented are no longer live or when the parties lack a generally cognizable interest in the outcome—a case or controversy ceases to exist," and I must dismiss the case for lack of jurisdiction. *Redfern v. Napolitano*, 727 F.3d 77, 83–84 (1st Cir. 2013) (quoting *Maher v. Hyde*, 272 F.3d 83, 86 (1st Cir. 2001)). A "case is moot when the court cannot give any effectual relief to the potentially prevailing party." *Bayley's Campground, Inc. v. Mills*, 985 F.3d 153, 157 (1st Cir. 2021) (quoting *Town of Portsmouth, R.I. v. Lewis*, 813 F.3d 54, 58 (1st Cir. 2016)). The party moving to dismiss a case as moot bears the burden of establishing that the case is, in fact, moot. *See Bos. Bit Labs, Inc. v. Baker*, 11 F.4th 3, 8 (1st Cir. 2021).

As Defendants note, my analysis of this issue is guided by the First Circuit's recent decision in *Boston Bit Labs*, in which the Court of Appeals concluded that a challenge to previously repealed COVID-19 protective measures in Massachusetts was moot. *See Bos. Bit Labs*, 11 F.4th at 9. In *Boston Bit Labs*, the plaintiff challenged a gubernatorial executive order that permitted certain types of businesses to open to the public while mandating that others remained closed. *Id.* at 7. The district court, noting that the governor had amended the challenged order in a manner that permitted the plaintiff's business to

9

open, dismissed as moot the plaintiff's suit for declaratory and injunctive relief. *Id.* The Court of Appeals affirmed, noting that with "the offending executive order wiped away, there [was] nothing harming" the plaintiff. *Id.* at 9.

I see no reason why the present case is any different. Plaintiffs focus their challenge on the State of Civil Emergency and four categories of executive orders and administrative guidance issued pursuant thereto: face mask mandates, travel restrictions and quarantine requirements, gathering limits, and business closures. But Governor Mills ended the State of Civil Emergency on June 30, and none of the challenged emergency measures are still in place.[4] Likewise, to the extent that Plaintiffs challenge the Legislature's decision to refuse to convene for nearly a year, they take issue with past events for which I have no authority to provide redress—as Plaintiffs acknowledge, the Legislature fully reconvened in March 2021. Complaint 28. Thus, even if I were to reach the merits of this case, there simply would be "no ongoing conduct to" declare unconstitutional. *Town of Portsmouth, R.I.*, 813 F.3d at 58.

A.

Plaintiffs contend that their claims are not moot because "Defendants have voluntarily terminated" the challenged emergency measures while leaving open the possibility that the measures could be re-instituted at any point in the future. Pls.' Opp'n

---

[4] Though Plaintiffs' non-delegation claim is ultimately an argument against the constitutionality of MEMA, the fact that MEMA itself remains in place does not save that claim from mootness. As Governor Mills has repealed the offending executive orders and ended the State of Civil Emergency, Plaintiffs no longer have the requisite "personal interest at stake" to challenge MEMA's validity. *Becker v. Fed. Election Comm'n*, 230 F.3d 381, 386 n.3 (1st Cir. 2000).

10

14 (ECF No. 36). But the mere fact that Defendants themselves chose to revoke the challenged policies cannot save this case from mootness.

A "defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice," *City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 289 (1982), so long as there exists "a reasonable expectation that the challenged conduct will be repeated following dismissal of the case." *Am. C.L. Union of Massachusetts v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 56 (1st Cir. 2013). The burden is on the party raising mootness to make "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). This exception to the mootness doctrine reflects the common-sense principle that a defendant should not be able to evade litigation by temporarily and unilaterally abandoning a challenged practice just until the clouds of litigation have cleared. *Bos. Bit Labs*, 11 F.4th at 10. As a result, a voluntary change in conduct only defeats mootness where a defendant changes her conduct in response to litigation. *See id.*

I find this exception to mootness inapplicable for two reasons. First, Defendants have made abundantly clear that Plaintiffs cannot reasonably expect the alleged harms to reoccur. Maine's State of Civil Emergency, which expanded Governor Mills' authority to issue emergency executive orders, expired on June 30, 2021. *See* E.O. 40 FY 20/21. And although Governor Mills retains the constitutional authority to reinstate the State of Civil Emergency or other extraordinary public health measures, she has not done so even in the face of a recent "uptick" in Maine's COVID-19 case count. *Bos. Bit Labs,* 11 F.4th at 11–

12 (rejecting voluntary cessation argument in similar factual context). Indeed, the Governor's chief legal counsel expressly rejected the likelihood of such orders being reimposed. Reid Aff. ¶¶ 14–17 (ECF No. 32). This is because—as Plaintiffs themselves acknowledge—"conditions on the ground have changed," with most Mainers now vaccinated against the disease and government officials are now better informed as to which targeted public health interventions are most effective. Complaint 7–8

Second, the evidence suggests that Defendants' abandonment of the challenged measures constituted a series of good-faith policy changes in response to an evolving public health crisis, rather than an attempt to evade litigation. In *Boston Bit Labs*, the First Circuit rejected the possibility that the defendant there had amended the challenged executive order in response to litigation—even though the change came "[j]ust days" after the plaintiffs filed suit—because the amended order coincided with a genuine change in public health conditions. *See Bos. Bit Labs*, 11 F.4th at 7, 10. Here, Governor Mills repealed the challenged emergency response measures on June 30, 2021—nearly three months after Plaintiffs filed the initial complaint, but only five weeks after Maine reached the important milestone of providing a first dose of the COVID-19 vaccine to over seventy percent of eligible Mainers.[5] What's more, both the text of Governor Mills' order ending the State of Civil Emergency and subsequent representations of her legal counsel make clear that the

---

[5] The five-week delay is itself a relevant data point. The COVID-19 vaccine requires a waiting period of three weeks between doses, and is generally thought to become fully effective two weeks after the second dose, suggesting that Maine's State of Civil Emergency ended around the time that approximately two-thirds of eligible Mainers were fully inoculated against to COVID-19.

Governor chose to end the emergency public health measures at that time because the public health situation in Maine had improved. *See* E.O. 40 FY 20/21; Reid Aff. ¶ 12.

Plaintiffs rely on cases from earlier in the COVID-19 pandemic in which courts declined to dismiss as moot challenges to emergency pandemic response measures that had been abandoned. *See* Pls.' Opp'n at 15 (citing *Cuomo*, 141 S. Ct. at 68, and *Bayley's Campground*, 985 F.3d at 157). But those cases were decided during the height of the global pandemic, when officials "regularly change[d]" pandemic response measures "without prior notice," *see Cuomo*, 141 S. Ct. at 68, often updating regulations every few days, *see id.* at 68 n.3. By contrast, rising vaccination rates and a growing understanding of how COVID-19 spreads have brought greater stability to state COVID-19 responses—Governor Mills repealed the challenged executive orders several months ago and has not issued any similar executive orders since. In this context, a lasting change in public policy in response to changing expert guidance is sufficient to moot Plaintiffs' claims notwithstanding the theoretical possibility that Defendants could reinstitute similar policies. Even if Defendants were to institute similar policies in the future, Plaintiffs would have ample opportunity to press their claims at that time, as discussed in the following section.

B.

Plaintiffs also suggest that their claims are not moot insofar as they are "capable of repetition, yet evad[e] review." Complaint 19 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)). Under this doctrine, a case that would otherwise be moot is deemed justiciable if the plaintiff can show that "(1) the challenged action was in its duration too

short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Gulf of Me. Fisherman's All. v. Daley*, 292 F.3d 84, 89 (1st Cir. 2002) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam)). But Plaintiffs' arguments fail on both fronts.

The challenged orders were in place long enough that Plaintiffs could have fully litigated them prior to their expiration. Maine's State of Civil Emergency and the attendant series of executive orders were in place for over fifteen months, while the Legislature was in recess for nearly twelve months. During this time, several challenges to public health measures in Maine and elsewhere were litigated at least far enough to grant or deny preliminary injunctive relief, including multiple cases that were litigated all the way to the Supreme Court. *See, e.g.*, *Valentine v. Collier*, 141 S. Ct. 57 (2020) (denying application to vacate stay); *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020); *Bayley's Campground*, 985 F.3d 153. By contrast, Plaintiffs waited twelve months after the State of Civil Emergency began before filing this suit for declaratory relief. That their claims are now moot has little to do the pace of litigation, and everything to do with their own delay.

Nor can Plaintiffs reasonably expect that Maine will instate similar public health measures in the future. Plaintiffs correctly note that Defendants updated the challenged public health measures repeatedly throughout the State of Civil Emergency, often reversing a prior decision shortly after it was made. *See* Complaint 20. But Defendants have not

imposed any new public health restrictions in the four months since the State of Civil Emergency ended and have disavowed any intention of doing so. *See* Reid. Aff. ¶¶ 14–17.

Plaintiffs' claims for declaratory relief, then, must be dismissed as moot.

## CONCLUSION

Defendants' Motion to Dismiss is GRANTED.

**SO ORDERED.**

Dated this 5th day of November, 2021.

                                        /s/ Lance E. Walker
                                        UNITED STATES DISTRICT JUDGE